```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
JERRY LITWIN, individually and on    :
behalf of all others similarly       :
situated,                            :
                                     :      10 Civ. 9609 (JSR)
                Plaintiff,           :
                                     :      MEMORANDUM ORDER
        -v-                          :
                                     :
CHASE BANK USA, N.A.,                :
                                     :
                Defendant.           :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

On February 18, 2011 defendant Chase Bank USA, N.A. ("Chase" or the "Issuer") moved to dismiss this purported class action filed by plaintiff Jerry Litwin. On March 10, 2011, about two weeks after defendant filed its motion to dismiss, plaintiff filed a First Amended Complaint ("Amended Complaint"). Defendant utilized its reply papers and oral argument to respond to the new issues raised by this amended pleading. On May 3, 2011, the Court issued a "bottom-line" order granting defendant's motion to dismiss in its entirety. This Memorandum Order explains the reasons for the Court's decision and directs the entry of final judgment.

Plaintiff's Amended Complaint alleges, in a single count, that Chase provided incomplete or improper disclosures to its customers in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. (2009). Am. Compl. ¶¶ 1, 3. Within that count, however, plaintiff alleges that Chase committed three different violations of TILA:

First, plaintiff maintains that TILA requires issuers of open-end credit accounts that offer a "grace period" for purchases - i.e., a time period within which an obligor may repay any portion of the credit extended without incurring an additional finance charge - to provide customers with a period of at least 21 days after the close of the billing cycle to repay the applicable charges and thereby avoid paying additional interest. Id. ¶ 29 (citing 15 U.S.C. § 1666b(b)). According to plaintiff, however, Chase sent plaintiff a periodic billing statement with a closing date of December 28, 2009 (the "December Statement") that included a descriptive section entitled "Grace Period (at least 20 days)." Id. ¶ 31 (the "Grace Period Disclosure"). Similarly, Chase included the same Grace Period Disclosure on a periodic billing statement with a closing date of January 28, 2010 (the "January Statement"). Id. ¶ 32. Plaintiff alleges that "[b]ecause [the] Issuer's Grace Period Disclosure disclosed a term that fell short of the federally mandated minimum grace period, [the] Issuer's Grace Period Disclosure did not reflect the legal obligations of the parties, and thus violated . . . TILA." Id. ¶ 33.

Second, plaintiff notes that both the December and January periodic statements included the following disclosure:

> Crediting of Payments: . . . If your payment is in accordance with our payment instructions and is made available to us on any day except December 25 by 1:00 p.m. local time at our

> Payments address on this statement, we will credit the payment to your account as of that day. If your payment is in accordance with our payment instructions, but is made available to us after 1:00 p.m. local time at our Payments address on this statement, we will credit it to your account as of the next day.

Id. ¶ 37; see Exhibits A and B (the "Cut-Off Disclosure"). Plaintiff maintains that, pursuant to the 2009 amendments to TILA, Chase was legally obligated "to credit any conforming mailed payments received on February 22, 2010 or thereafter on the same day if such payment was received as late as 5:00 p.m." Id. ¶ 39 (citing 15 U.S.C. § 1666(c)). Plaintiff contends that the January Statement violated this requirement because it disclosed a "Payment Due Date" of February 22, 2010, and this disclosure, "when taken together with the Cut-Off Disclosure, indicated that the grace period ended on February 22, 2010 at 1:00 p.m." Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Amended Complaint ("Pl. Mem.") at 6; Am. Compl. ¶ 38. Plaintiff therefore alleges that the Cut-Off Disclosure in the January Statement "did not properly disclose the grace period, in violation of 12 C.F.R. §226.7(b)(8), and did not reflect the legal obligations of the parties, in violation of 12 C.F.R. §226.5(c)." Am. Compl. ¶ 41. Plaintiff further maintains that the applicable regulation requires a creditor to make its terms "reasonable," and specifies that a cut-off time for mailed

payments before 5:00 p.m. is not "reasonable." Id. ¶ 40 (citing 12 C.F.R. § 226.10).

Third, plaintiff alleges that both the December and January Statements included promotional material regarding Chase's "Flexible Rewards" program interspersed on the same page with mandatory disclosures, which allegedly violated TILA's requirement that mandatory disclosures must be made "clearly and conspicuously," 12 C.F.R. § 226.5(a), on an "integrated document." Id. ¶ 34 (quoting 12 C.F.R. § 226 Supp. I, Comment 5(a)(1)-4)). Plaintiff also claims that the January Statement included promotional material for "TurboTax" products interspersed with mandatory disclosures, "further running afoul" of TILA's requirements. Id. ¶ 35.

Plaintiff seeks the following relief for these purported violations:

> (1) An order certifying the proposed Class under Federal Rule of Civil Procedure 23(b)(2) and, additionally or in the alternative, an order certifying the Class under Federal Rule of Civil Procedure 23(b)(3); (2) A declaration that the Issuer's systematic and standard policy of failing to accurately disclose to its customers the terms of their accounts violates the Truth in Lending Act; (3) An injunction permanently prohibiting the Issuer from engaging in the conduct described; (4) Maximum statutory damages as provided under 15 U.S.C. § 1640(a)(2); (5) Attorney fees, litigation expenses, and costs; and (6) Such other and further relief as to this Court may seem just and proper."

Am. Compl. at p. 10.

4

In assessing the merits of plaintiff's claims, the Court may properly take notice of the December and January Statements themselves, which plaintiff has attached as exhibits to the Amended Complaint. See Am. Compl., Exs. A and B. Both periodic statements disclose, in boldface print and in two separate locations, the date by which plaintiff was required to make payment on his new purchases in order to avoid an interest charge. On the December Statement, issued for the billing cycle ending on December 28, 2009, the boldface words "Payment Due Date," accompanied by the boldface date "01/22/10," appear in the center of the front page of the periodic statement and on the upper left-hand corner of the pay slip designed to be sent with any payment. See Am. Compl. Ex. A; Memorandum of Law in Support of Motion to Dismiss of Chase Bank USA, N.A. ("Def. Mem.") at 4. Likewise, the January statement, issued for the billing cycle ending on January 28, 2010, displays the boldface words "Payment Due Date . . . 02/22/10" in the same two locations. See Am. Compl. Ex. B. Both statements also include the following boilerplate description, typed on the reverse side of the statements in fine print:

> Grace Period (at least 20 days): We accrue periodic finance charges on a transaction, fee, or finance charge from the date it is added to your daily balance until payment in full is received on your account. However, we do not charge periodic finance charges on new purchases billed during a billing cycle if we receive both payment of your New Balance on your current statement <u>by the date and time your payment is due</u> and also

5

>  payment of your New Balance on your previous statement <u>by the date and time your payment was due</u>. There is no grace period for balance transfers, cash advances, check transactions, or overdraft advances.

See Am. Compl. Ex. A & B (emphasis supplied). Thus, the customer is clearly informed, in each of the statements, that he will not incur finance charges if he makes payment by the due date, which, in the case of each statement annexed to the Amended Complaint, is <u>more than 21 days</u> after the period ended.

Nevertheless, plaintiff claims that defendant nonetheless violated TILA by the parenthetical "(at least 20 days)" after he words "Grace Period," when it should have said "21 days." An examination of the applicable law, however, reveals that plaintiff's argument is without merit. TILA and the accompanying "Regulation Z," the comprehensive regulation implementing TILA's mandates, require credit card issuers to send periodic statements to cardholders at the conclusion of each billing cycle. See 15 U.S.C. § 1637(b); 12 C.F.R. § 226.7. Regulation Z specifies that the periodic statement must disclose information related to any "grace period," which is "[t]he date by which or the time period within which the new balance or any portion of the new balance must be paid to avoid additional finance charges." 12 C.F.R. § 226.7.[1] In May 2009, Congress amended TILA to add a timing

---

[1] <u>See also</u> 15 U.S.C. § 1637(b):"The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an

6

requirement with respect to the mailing of periodic statements. The text of the new provision states:

> (a) Time to make payments. A creditor may not treat a payment on a credit card account under an open end consumer credit plan as late for any purpose, unless the creditor has adopted reasonable procedures designed to ensure that each periodic statement including the information required by section 1637(b) of this title is mailed or delivered to the consumer not later than 21 days before the payment due date.
>
> (b) Grace period. If an open end consumer credit plan provides a time period within which an obligor may repay any portion of the credit extended without incurring an additional finance charge, such additional finance charge may not be imposed with respect to such portion of the credit extended for the billing cycle of which such period is a part, unless a statement which includes the amount upon which the finance charge for the period is based was mailed or delivered to the consumer not later than 21 days before the date specified in the statement by which payment must be made in order to avoid imposition of that finance charge.

15 U.S.C. § 1666b. See also 12 C.F.R. § 226.5(b)(2)(ii) ("[A] card issuer must adopt reasonable procedures designed to ensure that: (1) Periodic statements are mailed or delivered at least 21 days prior to the payment due date disclosed on the statement pursuant to § 226.7(b)(11)(i)(A); and (2) The card issuer does not treat as late for any purpose a required minimum periodic payment received by the card issuer within 21 days after mailing

---

outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth each of the following items to the extent applicable: . . . (9) The date by which or the period (if any) within which, payment must be made to avoid additional finance charges, except that the creditor may, at his election and without disclosure, impose no such additional finance charge if payment is received after such date or the termination of such period."

7

or delivery of the periodic statement disclosing the due date for that payment.").

Chase correctly points out that it violated neither the disclosure requirement nor the new timing requirement regarding the mailing of periodic statements. In accordance with the statute and accompanying regulations, Chase clearly and prominently disclosed the "date by which" plaintiff was required to pay the applicable balance in order to avoid additional finance charges. 12 C.F.R. § 226.7. The December and January Statements disclosed, in boldface type and in two locations, that plaintiff was required to pay the balance by "01/22/10" and "02/22/10," respectively, dates that happened to be 25 days after the close of the previous billing cycle. Accordingly, neither statement violated the applicable disclosure requirements, as they appropriately indicated the dates on which plaintiff's payments were due.

Nor did Chase violate the new timing requirement with respect to the mailing of periodic statements. Plaintiff does not allege any of the following: (1) that Chase failed to adopt reasonable procedures designed to ensure that the statements were mailed or delivered to plaintiff no later than 21 days before the payment due date; (2) that Chase mailed the statements less than 21 days before the expiration of the grace periods disclosed on

8

each statement; (3) that Chase treated any of plaintiff's payments as late; or (4) that Chase imposed on the plaintiff any additional interest charges. By failing to assert any of these allegations in even the Amended Complaint that was filed after Chase had already filed its initial brief in its motion to dismiss, plaintiff cannot state a claim that Chase violated 15 U.S.C. § 1666b or 12 C.F.R. § 226.5(b)(2)(ii).

Instead, as aptly stated by the defendant, "plaintiff seeks to manufacture a technical violation by combining TILA's timing requirement regarding the mailing of periodic statements with Regulation Z's general requirement that disclosures reflect the 'terms of the legal obligation between the parties' (12 C.F.R. § 226.5(c))." Def. Mem. at 7. Unfortunately for plaintiff, however, he cannot state a claim by manufacturing a rule that does not exist and then claiming that the defendant violated this invented legislative mandate. To be clear, Chase's statement that the grace period extends for at least 20 days in no way violates the requirement that Chase <u>mail</u> the periodic statement 21 days before the payment due date in order to impose additional finance charges. Nor is the statement inconsistent with Chase's proper disclosure of the applicable payment due dates, which correctly state the legal obligations of the parties. Accordingly, plaintiff's first claim must be dismissed.

9

Plaintiff's second claim regarding the Cut-Off Disclosure suffers from similar defects. Plaintiff contends that the Cut-Off Disclosure in the January 28 Statement incorrectly disclosed that the grace period with respect to mailed payments would end on February 22, 2010 at 1:00 p.m. Pl. Mem. at 6. However, as succinctly summarized by defendant in its reply papers, this argument must fail for at least three reasons. First, plaintiff does not allege that Chase violated the applicable requirement regarding the crediting of payments -- i.e., he does not allege that Chase received his payment between 1:00 p.m. and 5:00 p.m. on February 22 2010 and failed to credit the payment on that day. See Reply Brief in Support of Motion to Dismiss of Chase Bank USA, N.A. ("Def. Reply") at 4.[2] Second, the relevant disclosure requirement was satisfied by Chase's proper disclosure of the date on which plaintiff's payment was due. Id. Third, 15 U.S.C.S. § 1666(c) was not in effect at the time Chase made the disclosures and did not take effect until February 22, 2010. "[D]isclosures should reflect the credit terms to which the

---

[2] See also 15 U.S.C.S. § 1666(c) ("Payments received from an obligor under an open end consumer credit plan by the creditor shall be posted promptly to the obligor's account as specified in regulations of the Board. Such regulations shall prevent a finance charge from being imposed on any obligor if the creditor has received the obligor's payment in readily identifiable form, by 5:00 p.m. on the date on which such payment is due, in the amount, manner, and location indicated by the creditor to avoid the imposition thereof."); 12 C.F.R. § 226.10(2).

10

parties are legally bound at the time of giving the disclosures," 12 C.F.R. pt. 226, Supp. I, ¶ 5(c), and in this case the Cut-Off Disclosure was made well before February 22, 2010.[3]

Finally, plaintiff's arguments regarding the "integrated document" requirement also fail. The Official Staff Interpretations to Regulation Z contain the following commentary:

> *Integrated document.* The creditor may make both the account-opening disclosures (§ 226.6) and the periodic-statement disclosures (§ 226.7) on more than one page, and use both the front and the reverse sides, except where otherwise indicated, so long as the pages constitute an integrated document. An integrated document would not include disclosure pages provided to the consumer at different times or disclosures interspersed on the same page with promotional material. An integrated document would include, for example: i. Multiple pages provided in the same envelope that cover related material and are folded together, numbered consecutively, or clearly labeled to show that they relate to one another; or ii. A brochure that contains disclosures and explanatory material about a range of services the creditor offers, such credit, checking account, and electronic fund transfer features.

12 C.F.R. pt. 226, Supp. I, Subpart B, Section 226.5, ¶ 5(a)(1)-4. Plaintiff contends that, by including information regarding the Flexible Rewards and "TurboTax" programs in the periodic statements, Chase violated these requirements. As an initial matter, defendant points out that information concerning plaintiff's Flexible Rewards points balance under his credit

---

[3] Plaintiff's argument that it was inherently unreasonable for Chase to provide a cutoff time of 1:00 p.m. even before the February 22, 2010 amendments is frivolous. See P. Mem. at 7. Setting a payment due-date of 25 days after the close of the billing cycle and requiring receipt of payment by 1:00 p.m. on that day is actually more favorable to credit card holders than

11

card's Flexible Rewards program is not promotional material at all. Rather, it is information concerning a benefit or service accruing to plaintiff under his credit-card account. As defendant notes, "[a]s of the January statement, plaintiff possessed enough points to receive a $100 statement credit on his account. . . . Indeed, Chase would have been remiss had it not informed plaintiff of this fact." Def. Mem. at 8. At a minimum, it cannot be the case that Chase violated the integrated document requirement by including in the statement important information concerning plaintiff's individual account, including the number of points plaintiff had accrued and the date on which certain points would expire if left unused.

Whether or not the information regarding "TurboTax" is promotional is a closer question. But even assuming this information is promotional, the commentary states that an "integrated document" includes "[a] brochure that contains disclosures and explanatory material about a range of services the creditor offers." 12 C.F.R. Pt. 226, Supp. I, Subpart B, Section 226.5, ¶ 5(a)(1)-4. The "TurboTax" section highlighted by the plaintiff easily qualifies as "explanatory material" about a "service" offered by Chase. In any event, the commentary merely prohibits "disclosures <u>interspersed on the same page</u> with promotional material." <u>Id.</u> In this case, the January Statement

---

even the amended regulatins require.

does not "intersperse" the required disclosures "on the same page" with that TurboTax material. Instead, the TurboTax material appears at the very bottom of the page, set off by a text box with bold, capitalized letters and clear dividing lines. See Compl. Ex. B. As defendant points out, "intersperse" means "to scatter or set here and there among things" or "insert at intervals," see Webster's Third New International Dictionary (2002), and a clearly demarcated paragraph at the very bottom of the page in no way satisfies this definition. Additionally, the fact that disclosures also appeared on the reverse side of the Statement is immaterial, as the commentary is only concerned with promotional materials interspersed on the same page as required disclosures. Accordingly, plaintiff's third claim is also without merit.

For the foregoing reasons, plaintiff fails to state any valid claim under TILA. The Court therefore affirms its Order of May 3, 2011, dismissing the First Amended Complaint in its entirety, with prejudice, and directs the Clerk of the Court to enter final judgment in favor of defendant.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
May 16, 2011