14S3LITC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    JERRY LITWIN,

4                   Plaintiff,

5              v.                          10 CV 9609 (JSR)

6    CHASE BANK,

7                   Defendant.

8    ------------------------------x
                                          New York, N.Y.
9                                         April 28, 2011
                                          4:30 p.m.
10
     Before:
11
                         HON. JED S. RAKOFF,
12
                                          District Judge
13
                              APPEARANCES
14
     BROMBERG LAW OFFICE
15        Attorneys for Plaintiff
     BY:  BRIAN LEWIS BROMBERG
16        MICHAEL N. LITROWNIK
                  -and-
17   LAW OFFICE OF HARLEY J. SCHNALL
          Attorneys for Plaintiff
18   BY:  HARLEY J. SCHNALL

19   WILMER CUTLER PICKERING HALE & DORR
          Attorneys for Defendant
20   BY:  NOAH LEVINE
          JAMIE DYCUS

21

22

23

24

25

14S3LITC

1           (In open court)

2           THE DEPUTY CLERK:  Will the parties please identify

3   themselves for the record.

4           MR. BROMBERG:  Brian L. Bromberg, Bromberg Law Office

5   PC for the plaintiff.  I have with me my associate Michael

6   Litrownik who has not yet been admitted to this court.  He just

7   started working with me last week.  I hope it's all right if he

8   sits up here.

9           THE COURT:  Sure.

10          MR. SCHNALL:  Harley Schnall also for plaintiff.

11          MR. LEVINE:  Noah Levine from the law firm Wilmer

12   Hale, and I have with me Jaime Dycus.

13          THE COURT:  Good afternoon.  We're here on the motion

14   to dismiss.  Let me hear first from moving counsel.

15          MR. LEVINE:  Thank you, your Honor.  We submit that

16   the first amended complaint should be dismissed for two

17   reasons.  On the liability question, the complaint does not

18   state a claim for a violation of any provision of the Truth in

19   Lending Act or Regulation Z, and on the remedy question the

20   complaint does not state a claim for any legally valid form of

21   relief.

22          I'll discuss each of those points.  The first point is

23   that there is not any claim stated for a violation of

24   Regulation Z or the Truth in Lending Act.  I'll cut right to

25   the heart of the matter.  The liability issue in this case is a

14S3LITC

simple one.  Plaintiff alleges that a disclosure that appeared

on his periodic statement is inconsistent with legal

obligations that Chase had to him, and for that reason, he

alleges that it violates 12 CFR 226.5(c), which is a provision

of Regulation Z under the Truth in Lending Act that states that

disclosures must reflect the terms of the legal obligations

between the parties.  Here, the legal obligation that's at

issue is Regulation Z's requirement that a creditor, quote,

adopt reasonable procedures designed to ensure that periodic

statements are mailed at least 21 days prior to the date on

which any agrees period expires.  And that can be found at

226.5(b)(2) -- it's changed the numbers, but could be found

under 226.5(b)(2).

Just so you know, a grace period is the time within

which a cardholder can repay their balance --

THE COURT:  I understand.  So if you look at the

statement, for example, the Exhibit A to the first amended

complaint, so it says payment due date January 22, 2010.  And

then if you go to the description of grace period on the next

page, it says grace period at least 20 days.  And they're

saying it should say grace period at least 21 days, yes?

MR. LEVINE:  That is their argument, your Honor.

THE COURT:  What's wrong with that?

MR. LEVINE:  Our argument is that there's two problems

with that argument.  First of all, the Truth in Lending Act and

14S3LITC

1    Regulation Z has a very specific regulation about how you

2    disclose a grace period.  You disclose it by disclosing the

3    date on which the payment is due.  They need to know when to

4    send their payment in.  They don't need to be getting in when

5    does the 20 days start, when does it run from.  And this

6    statement, both statements clearly do that.  January 22,

7    February 22.  And as the plaintiff admits in their

8    opposition --

9            THE COURT:  Which is more than 21 days.

10           MR. LEVINE:  You got to my next point.  It's 25 days

11   here from the closing of the cycle.  The cycle close --

12           THE COURT:  The likelihood that anyone ever read any

13   of the boilerplate on the second page blinks reality.  If you

14   tried to read it, you would have to blink a lot because your

15   eyes would be easily worn out.  So, all right.  So I understand

16   all that.

17           Anything else you wanted to say?

18           MR. LEVINE:  One other point on that as well.  Which

19   is even if -- your point was it blinks reality that someone

20   would read it.  Even if you do, there is nothing inconsistent

21   with saying that a period is at least 20 days and it being 21

22   days.  I know this would be a different case if the only thing

23   that we told the cardholder -- we didn't tell them a due date

24   or anything, we just said your grace period is at least 20

25   days.  I pick when you are going to send the check in.  I get

14S3LITC

1   that.  But here the plaintiff admits that by our due date we

2   disclose grace periods that were 25 days on each of these

3   statements.  That's entirely consistent with saying at least 20

4   days, that's entirely consistent with the legal obligation

5   that's in 226.5.

6         That's all I would say on that first theory.  I think

7   that they recognize there was a problem with that because the

8   night before the response to our motion to dismiss was due, we

9   got an amended complaint, and it has a new wrinkle to the

10   theory now.  That wrinkle to the theory is that another

11   disclosure on the periodic statement is inconsistent with our

12   legal obligations.  That legal obligation is an obligation that

13   took effect on February 22, 2010, under Regulation Z.  There

14   was a new regulation that said if you are going to have a

15   cutoff time for when you will credit a payment received on that

16   day, it has to be at least 5 o'clock.  It can't be anything

17   earlier.  And they point to the disclosure on one of these

18   statements, just the second statement that's attached to

19   Exhibit A, and say the due date was as late as February 22

20   which was that first day of effectiveness and you said that

21   your cutoff time was 1 p.m. so that's inconsistent between the

22   two things.  Well, the problem is that this periodic statement

23   on which this claim is based went out well before February 22,

24   and there is nothing in Regulation Z that says we have an

25   obligation to disclose a future change in the law or what the

14S3LITC

1   law will be.  And to the extent there is any doubt about that,

2   the commentary to 226.5(c), which we quote in our reply brief,

3   is very clear on that.

4              THE COURT:  I don't need to hear that.

5              MR. LEVINE:  Okay.

6              THE COURT:  So, all right.  Why don't we, before we

7   get to your argument about remedy, let me hear from plaintiff's

8   counsel on liability.

9              MR. LEVINE:  Thank you, your Honor.

10             THE COURT:  Someone want to talk from plaintiff's

11   counsel?

12             MR. SCHNALL:  I'm sorry.  Thank you, your Honor.

13   Mr. Litwin here, our client, Chase has a number of

14   responsibilities to credit consumers like Mr. Litwin.  And the

15   application process at the account opening process, at the time

16   of sending periodic statements, and any other disclosures it

17   makes subsequent to account opening.  The bank is required to

18   provide a certain set of disclosures to its customers.  Now,

19   Congress authorized the Federal Reserve Board to implement --

20             THE COURT:  Please don't give me the history of the

21   world.  The argument that your adversary just advanced was,

22   first, the payment due date on both of these statements is more

23   than 21 days after the close of the statement.  So it complies

24   with the law.  And that boldface date stated right at the top

25   of the statement is self-evidently, they would say, total

14S3LITC

1    disclosure to the customer that if you pay by this date, you're

2    fine.  And there won't be charges if you pay by that date.

3    Which, the date stated is actually more than the law requires.

4           So, whatever quibbles there might be about this four

5    words in-parentheses deep in the legal gobbledygook that is

6    part of page two of this statement, couldn't possibly be

7    misleading to any reasonable customer.

8           So let me stop there.  Why isn't that right?

9           MR. SCHNALL:  Well, your Honor, the question is not

10   whether it's misleading or not to the customer.  The question

11   is, does the lender -- did the lender violate the regulations

12   as set forth by the board.  Now Congress authorized --

13           THE COURT:  How did they violate it?

14           MR. SCHNALL:  Well, Congress authorized the board to

15   promulgate regulations to help implement that act, and one of

16   the regulations was 226.5(c) which stated that the lender must

17   at all times disclose the legal obligations of the parties.

18   So, even if in one place the lender correctly disclosed the

19   legal obligations of the parties, on another place in another

20   disclosure on the back of the periodic statement, it said that

21   the grace period was generally at least 20 days, and I think

22   even Chase would concede that that disclosure did not represent

23   their legal obligation.

24           THE COURT:  You're saying that it should have read at

25   least 21 days.

14S3LITC

1          MR. SCHNALL:  Well, whatever the correct period was.

2          THE COURT:  What do you say the correct period was?

3          MR. SCHNALL:  It may have been 25 days.

4          THE COURT:  No.  Wait.  Excuse me.  You don't know

5   what it is?

6          MR. SCHNALL:  At this point we do not, your Honor,

7   know what the grace period was.  But we know it could not have

8   been 20 days.

9          THE COURT:  How can you say that there was a violation

10  when you don't even know what the law that you're asserting

11  they violated required at that time?

12         MR. SCHNALL:  Because there was the amendment to the

13  Truth in Lending Act in 2009 that changed the timing of grace

14  periods, that required grace periods to be at least 21 days.

15         THE COURT:  What was required at the time of this

16  statement?  The end of the first statement is end of

17  December 2009, and the second statement is beginning of -- is

18  January 2010.

19         So, what is your position as to what the law required

20  at that time?

21         MR. SCHNALL:  At the very least the law required --

22  they could have simply disclosed the grace period --

23         THE COURT:  I'm not getting an answer to my question.

24         MR. SCHNALL:  I'm sorry.  They could have --

25         THE COURT:  I'm not getting an answer to my question.

14S3LITC

1          MR. SCHNALL:  At least 21 days would be the minimum

2     requirement.

3          THE COURT:  So you're saying that there was a

4     violation of law because way down here in this boilerplate that

5     I think common sense suggests no one reads, and of course under

6     the Supreme Court's mandate of Iqbal and Twombly, I am required

7     on a motion to dismiss to apply common sense, a radical change

8     from previous law.  But assuming arguendo that someone read

9     that, they would be misinformed in a wholly immaterial and

10     irrelevant way because the payment due date, the only thing any

11     reasonable cardholder would possibly care about, was 25 days.

12          Is that your position?

13          MR. SCHNALL:  No.  Your Honor, we would submit that

14     what Chase did here was –– what they did was disclose a term

15     that did not reflect the legal obligation of the parties.

16     Irrespective of whether a consumer may read this or not, there

17     are lots of items on the back of this statement ––

18          THE COURT:  Excuse me.  Maybe I'm missing what you

19     think is the relevant legal standard here.  If some law

20     required in my hypothetical Chase to say on its disclosure in

21     connection with a credit card, these requirements do not apply

22     in Germany and France.  You think that someone from the United

23     States could bring a cause of action in those circumstances?

24          MR. SCHNALL:  No, your Honor.  That's not what I'm

25     saying here.

14S3LITC

```
 1              THE COURT:  So I agree with you.  So let's assume that
 2    in a different hypothetical, that the regulations said if you
 3    send your payment by the mail, the grace period is extended, in
 4    my hypothetical, by two days.  But Chase said in its mistaken
 5    form in my hypothetical, if you send your check by mail, your
 6    payment by mail, your grace period is extended one day.  But,
 7    the due date was further down the road, so if you send it by
 8    mail on the due date, in my hypothetical, it would be 100 days
 9    after the actual grace period.  So, Chase in its due date was
10    saying we don't care if it's one day, two days or 100 days,
11    we'll still credit your payment.
12              You say that someone could bring an action because it
13    said you only get one day if you send it by mail, rather than
14    two days, even though the actual arrangement that Chase had
15    arranged by the due date meant if you send it by mail and it
16    even took 100 days -- that's approximately how long it takes
17    mail to get from one chamber to another in the Southern
18    District of New York courthouse on a good day -- that that
19    would be a violation.  How could that possibly be the law?
20              MR. SCHNALL:  What we're saying here if Chase recites
21    a term of law that's contrary to law --
22              THE COURT:  You say "gotcha" even though there's no
23    conceivable harm given the due date.
24              MR. SCHNALL:  The harm is not -- the harm is not
25    making the proper disclosure to a customer.
```

14S3LITC

```
 1          THE COURT:  That's why I gave my much more --

 2          MR. SCHNALL:  If I'm --

 3          THE COURT:  So let's just say there was a typo.  Let's

 4     just say, for example, they have this whole business in here

 5     about that you can't make payment on December 25.  It is not a

 6     Christian thing to do.  And if instead by mistake they put

 7     December 24, and the law in my hypothetical require them to say

 8     December 25, would you say, even though you would be unable to

 9     cite any individual case, including that of your own plaintiff,

10     where anyone was actually harmed by that, but your position is

11     it is a free floating violation in and of itself.

12          MR. SCHNALL:  Under the strict liability regime of the

13     Truth in Lending Act, any sort of disclosure that does not

14     reflect the legal obligations --

15          THE COURT:  Strict liability means you don't have to

16     have intent.  You still have to have harm.  Do you not?

17          MR. SCHNALL:  The harm is in not making the proper

18     disclosure.  Making a deficient disclosure.

19          THE COURT:  That's the harm I just hypothesized.  You

20     are informed in fact that your payment is due on a date that

21     complies with both 20 days, 21 days, and 25 days under any of

22     the versions of the law.  But we disregard that, says you, we

23     don't want to deal with the actual date that the bank told the

24     customers that was due because there is this free floating,

25     abstract, totally immaterial constructive harm, but not a harm,
```

14S3LITC

| 1 | just a harm in the legalistic sense you're positing, that you |

1    just a harm in the legalistic sense you're positing, that you

2    somehow made a mistake in the number of days you put under the

3    grace period.  How could that be the law?

4           MR. SCHNALL:  Well, the grace period disclosure that

5    Chase made here doesn't just refer to the current billing

6    period.  It is a general disclosure.  It refers to future

7    billing periods as well.

8           THE COURT:  If you had shown me a bill where the

9    payment due date was less than 21 or even less than 25 days,

10   that might be interesting.  But you didn't sue on that basis.

11          MR. SCHNALL:  That's correct.

12          THE COURT:  So what about your other theory?

13          MR. SCHNALL:  Our other theory is on the cutoff time,

14   your Honor.  Chase disclosed that the cutoff time is 1 p.m. and

15   again, the law changed --

16          THE COURT:  Did it change before these statements were

17   sent to the customers?

18          MR. SCHNALL:  Yes, it did.  But the effective date was

19   February 22 but the change in law was --

20          THE COURT:  The effective date is when the law takes

21   effect, right?  If a law has an effective date of X, that means

22   that you're not bound by it until day X, right?  That's what

23   effective date means.

24          MR. SCHNALL:  Well, not necessarily in this case, your

25   Honor.

14S3LITC

```
 1            THE COURT:  Why not?

 2            MR. SCHNALL:  Because Chase here -- yes, was on the

 3    cusp of the change in the law, but the due date was

 4    February 22, on the actual date of the change.  And Chase was

 5    disclosing several weeks in advance, was effectively disclosing

 6    that the customer's payment, if it arrived on February 22,

 7    after 1 p.m., it would not count as February 22, it would count

 8    as February 23.  And again, that was not the legal obligation

 9    of the parties.  This is not a law that emerged on February 22.

10    It emerged in May.  Chase had notice that the law was

11    changing --

12            THE COURT:  And the effective date of the law was

13    when?

14            MR. SCHNALL:  The effective date was February -- for

15    payments made on or after February 22, any payment that arrives

16    by 5 p.m., must be credited on the same day, on the date of

17    receipt.

18            THE COURT:  So the effective date was February 22?

19            MR. SCHNALL:  Yes.

20            THE COURT:  And so, are you saying that your plaintiff

21    actually didn't get credit -- actually was charged interest or

22    suffered because he or she put in -- who is the plaintiff here?

23    I'm sorry.  Jerry Litwin.  Did Mr. Litwin, do you recite in

24    your amended complaint that Mr. Litwin sent in a check that

25    arrived after 1 p.m. and before 5 p.m. on January 22 and that
```

14S3LITC

```
1    he was therefore charged interest?

2              MR. SCHNALL:  No.  Again, it is a disclosure

3    violation.

4              THE COURT:  It is another of your abstract claims.

5              MR. SCHNALL:  Well --

6              THE COURT:  How does that meet the requirements of

7    Article III of the Constitution?

8              MR. SCHNALL:  Well, respectfully, your Honor, we

9    submit it is not abstract.  Congress determined that these

10   disclosures, a certain set of disclosures needed to be made,

11   and the issue is not whether a consumer read it.  It is whether

12   the lender furnished it.

13             THE COURT:  So, let's say that Congress decreed that

14   there should be disclosed that if you live in Hawaii you will

15   be given an extra grace day, and that Chase failed to notice

16   that on in its disclosures.  And then someone brings an action

17   in New York, a New York resident brings an action in New York,

18   saying that wasn't disclosed.  I agree it has no application to

19   me whatsoever, but it wasn't disclosed and that gives me the

20   right to sue.  Is that your position?

21             MR. SCHNALL:  No, your Honor.

22             THE COURT:  Why is that any different from this?  What

23   gives Mr. Litwin the right to sue on something that didn't

24   affect him?

25             MR. SCHNALL:  Well, it is presumed to affect the
```

14S3LITC

1   consumer.  If a consumer doesn't receive a complete set of

2   information, it is presumed to harm them.  That's what Congress

3   has said.

4            THE COURT:  Where do they say that?

5            MR. SCHNALL:  Well, the purpose of the Truth in

6   Lending Act --

7            THE COURT:  Where did they say what you just said?

8   They said they created a legal presumption that someone would

9   be harmed in a case where there is not even the slightest

10  allegation that in fact the person was harmed.  Where is that?

11  Where did Congress say we create this presumption?

12           MR. SCHNALL:  Well, Congress provides for statutory

13  damages even when there are no actual damages.

14           THE COURT:  That is a different story.  That of course

15  runs through much of the law and that's because actual damages

16  are sometimes difficult to calculate.  That's the purpose of

17  statutory damages.  It is not to give standing to someone who

18  hasn't suffered any injury at all.  I have grave doubts that

19  Congress could, even if it wanted to under Article III, create

20  a cause of action cognizable in the federal court for someone

21  who in fact suffered no injury.  And if they did do that, they

22  would certainly have to do it quite explicitly.

23           MR. SCHNALL:  Well, your Honor, courts have determined

24  that this was Congress's intent.

25           THE COURT:  Well, show me what case are you referring

14S3LITC

```
1   to.
2             MR. SCHNALL:  Well, specifically, we cite in our brief
3   DeMando v. Morris.
4             THE COURT:  So let me pull that out.  Hold on a
5   minute.  Do we have that here?  Do you have a copy of that,
6   counsel?
7             MR. SCHNALL:  Yes.
8             THE COURT:  Could you just hand it up for a minute.
9   So this is a decision of the Ninth Circuit.  Some might
10  facetiously say it's therefore presumptively subject to
11  reversal by the Supreme Court, but I won't say that.  Not least
12  because it's authored by my college mate Chief Judge Schroeder.
13  And she says as follows:  DeMando -- that's the plaintiff -- is
14  entitled to proceed, however, with her claim that the 1997
15  notice of change in terms violated TILA, because the notice
16  contained terms that were in violation of the credit agreement,
17  the notice violated Regulation Z, and then she goes on to say
18  DeMando has suffered the loss of a statutory right to
19  disclosure and has therefore suffered injury in fact for
20  purposes of Article III standing.
21            Now, this is a case, is it not, of complete
22  non-disclosure, not of a mistaken disclosure?
23            MR. SCHNALL:  No, your Honor, it was a misdisclosure.
24            THE COURT:  Misdisclosure?
25            MR. SCHNALL:  She had been given at one point a 10.9
```

14S3LITC

1    APR for life, and subsequently she got a change of terms notice

2    that said her APR was not really for life, that it was being

3    raised to 14.9.

4            THE COURT:  So that was either actual or threatened

5    real harm.

6            MR. SCHNALL:  If I may finish, your Honor.  She

7    communicated with the bank, she complained, and they restored

8    her APR.  They never, ever raised her rate.  They gave her a

9    change in terms notice that it would be effective in two months

10   and they reversed it before that two month period elapsed.

11           THE COURT:  But she had suffered there.  It was only

12   because she took action that they changed their position.  So,

13   she would have been entitled to some sort of compensation and

14   that would be a good example where statutory damages would be a

15   more practical measure than how much time and effort and so

16   forth she had expended to get that fixed.

17           MR. SCHNALL:  Well, perhaps she might have been

18   entitled to actual damages in addition to statutory damages had

19   she not complained.  But --

20           THE COURT:  Anyway, I agree with you that this case or

21   at least the language I just read is helpful to your position.

22   So, let me switch back to defense counsel and we'll come back

23   to you in a minute.

24           What about this case?

25           MR. LEVINE:  Sure.  A couple things.  First of all, I

14S3LITC

1  agree with your view that you stated, your Honor, about if

2  there is no harm.  I think, well, there is a slight conceptual

3  distinction though between saying the person wasn't harmed and

4  saying that in fact there was no non-disclosure to the person

5  at all.  And I think this is a case where there is no

6  non-disclosure at all.  The DeMando case is an example where

7  the court said Capital One had promised a 10.999 life APR.

8  They disclosed to her a change of terms notice that your APR is

9  14.99.  That was a clear violation of the rule that said the

10  disclosures have to reflect the legal obligations of the

11  parties.

12        Here, we don't have anything that says Chase disclosed

13  that, Mr. Litwin, your grace period for these two months is

14  going to be 20 days.  What we have is two periodic statements

15  that say your grace period is 25 days, including on the back a

16  statement that says at least 20 days.  There is nothing

17  inconsistent between those.

18        THE COURT:  There is nothing where it says in haec

19  verba at least 25 days or is 25 days as you just said.

20        MR. LEVINE:  You're right.

21        THE COURT:  You're getting that because of the

22  calculated difference between the end of the statement date and

23  the due date.

24        MR. LEVINE:  You're right.  But importantly, TILA

25  Regulation Z, actually it's both in the statute and in the

14S3LITC

1   regulation says that that's the way you disclose a grace

2   period.  It says you disclose the date on which it expires so

3   we're not -- there is nothing in the reg that says give them

4   the total number of days.  It actually says if you look in the

5   version of the regulation that was in effect at the time these

6   disclosures went out --

7          THE COURT:  Anyone reading the second -- the statement

8   that is in your disclosures about, quote, at least 20 days,

9   could think, well, that's what the law requires, they gave me

10  here, it's nice of them making it 25 days, but there is no

11  guarantee of getting that in the future.  All I'm entitled to

12  as of right is 20 days, which would be not correct.

13         MR. LEVINE:  In the periodic statement under the way

14  the Truth in Lending Act works is not the way you inform people

15  about their going forward terms.  It is a periodic statement

16  that is telling them about what is your grace period here.

17  Truth in Lending has many stages of disclosures.

18         THE COURT:  But isn't that inconsistent with the

19  argument you just made a minute ago?

20         MR. LEVINE:  No.

21         THE COURT:  Your argument to me a minute ago was that

22  in effect and you believe in the way that the law prefers, the

23  statement said you have at least -- not at least -- you have 25

24  days as a grace period.  That that was the impact of the actual

25  due date.  And your adversary says, well, that's all fine and

14S3LITC

| | |
|---|---|
| 1 | good, but that could have been not as by operation of law, all |
| 2 | that you're telling me the person there is by our good grace, |
| 3 | Chase's, we're going to give you 25 days.  If the person wanted |
| 4 | to know what they were entitled to as of law, they would look |
| 5 | at this statement down in the disclosure, and they would see in |
| 6 | bold face, no less, the reference to 20 days.  So they would |
| 7 | say, okay, that's my legal right is 20 days.  Whereas their |
| 8 | legal right is 21 days. |
| 9 | So, isn't that what Chase is saying to the customer is |
| 10 | you're right? |
| 11 | MR. LEVINE:  No. |
| 12 | THE COURT:  No?  Wait, excuse me. |
| 13 | MR. LEVINE:  Okay. |
| 14 | THE COURT:  Let me make sure I hear your answer |
| 15 | correctly.  Because I'm mystified by it. |
| 16 | MR. LEVINE:  Okay. |
| 17 | THE COURT:  Where Chase says grace period -- where is |
| 18 | it.  "Grace period (at least 20 days)" what are they conveying |
| 19 | by those words? |
| 20 | MR. LEVINE:  The grace period for this period, for |
| 21 | this billing cycle, is at least 20 days.  And that was the |
| 22 | distinction. |
| 23 | THE COURT:  And if that's what they're conveying, |
| 24 | that's inconsistent with what the law requires. |
| 25 | MR. LEVINE:  It is not.  And if you take it in |

14S3LITC

 1    isolation, your Honor.

 2            THE COURT:  I'll take it in isolation.

 3            MR. LEVINE:  Let's do that, I'll go with that.  In

 4    isolation, had there been nothing else, you're right.  Had you

 5    only told the cardholder your period is at least 20 days, we

 6    are not going to tell you anything about when your payment is

 7    due, you go by 20 days.  That's what you have.  But it is not

 8    in isolation.  That's the issue here.  And what I was trying to

 9    say before is that periodic statement disclosures under the

10    Truth in Lending Act are for that period.  That's what -- the

11    Section 1637 of Title 15 is what has all these disclosure

12    requirements and there are different stages.  There are

13    solicitation stage disclosures, there are account open

14    disclosures, and there are periodic statement disclosures.  The

15    place in the Truth in Lending Act where you have to disclose

16    the grace period is on the periodic statement, and the way you

17    do it is by saying the date that it's due.  So this disclosure

18    right here can't be separated out from what else is on the

19    periodic statement.  It tells Mr. Litwin that you pay by

20    January 22 or February 22 on these two statements and you have

21    the benefit of the grace period.  At least 20 days isn't

22    inconsistent with that.

23            THE COURT:  You're not suggesting, are you, that Chase

24    consciously and intentionally chose to put in 20 days as

25    opposed to it simply being a typo?

14S3LITC

1              MR. LEVINE:  I'm not suggesting that.  What I'm

2    suggesting is it had been that way for a while, and it did

3    change.  It did change after that.  But as long as you're

4    disclosing the due date the right way, then it doesn't -- there

5    is nothing inconsistent.  What I was going to say is I don't

6    want to try the Court's patience with a hypothetical, but

7    imagine a Court rule that says oppositions to motions to

8    dismiss are due, you will have at least 20 days to respond, but

9    in the scheduling order for Litwin v. Chase U.S.A. Bank, it

10   says you have 25 days.  No one is going to misunderstand that

11   they have to get their brief in by 20 days.  It's been

12   disclosed.

13              THE COURT:  If the question is could there as a

14   practical matter be any misunderstanding here, then arguably

15   you win hands down.  But, what they're saying is there has been

16   a misinformation conveyed that is harmless as to their client,

17   but being lawyers that doesn't bother them one wit because they

18   feel they have a right to a statutory cause of action.  And I

19   guess the argument is it would be like a taxpayer suit almost,

20   which, last I checked is not normally permitted in the federal

21   courts, that in order to assure enforcement of these disclosure

22   obligations, we give anyone or at least any cardholder a right

23   to bring this cause of action.

24              So, your argument is, if I understand it, not

25   addressed to the fact that this was harmless, that they have

14S3LITC

1  even failed to allege any harm, but that taken together, there

2  was compliance with the disclosure requirements.

3       MR. LEVINE:  It is both arguments, in fact, your

4  Honor --

5       THE COURT:  So with respect to the first of those two

6  arguments, the lack of harm, what do you say as to this DeMando

7  case and the language?  Do you disagree with the case or are

8  you saying it's right but it is just distinguishable?

9       MR. LEVINE:  Two answers.  I'll answer your question

10  and then I'll explain how it relates.  I do think it is not

11  correct on that matter.  I don't think that you could have

12  someone who literally has absolutely no potential for harm

13  whatsoever because there was no potential for non-disclosure as

14  to that person.  A good example of this, a case we cite is the

15  Demery v. Citibank decision which was decided by Judge Baer

16  here.  It involved the same plaintiff's counsel in this case,

17  trying to say that there was some inconsistency between a

18  statement backer, that's what the back of this periodic

19  statement, and something else, and he said when you put those

20  two together, this is a tortured interpretation that borders on

21  the absurd.  No reasonable consumer would misunderstand this.

22  In those circumstances you don't have a claim in the first

23  instance.

24       That's why I think actually DeMando is actually

25  somewhat different.  There, there actually was a disclosure of

14S3LITC

1    14.99 when the legal obligation of the parties was a 10.99.  So

2    in that circumstance, it is distinguishable.

3            THE COURT:  There was an injury until they fixed --

4            MR. LEVINE:  There was an injury -- she never was

5    charged the 14.99 in that case, but you're right, she had to do

6    something about it.

7            Our position here is the way you put it, your Honor.

8    No reasonable consumer would look at these two things and

9    misunderstand what the grace period was.  And that's what TILA

10   requires, is that you disclose the grace period.  And what they

11   are trying to do is say, well, TILA also requires that your

12   disclosures reflect your legal obligations.  Well, nothing here

13   is inconsistent with the legal obligation in 226.5(b)(2) that

14   says we have to give them 21 days.

15           THE COURT:  All right.  I know we haven't covered all

16   the issues, but let me give plaintiff's counsel the final word

17   before we bring this argument to a close.

18           MR. SCHNALL:  Your Honor, the statement backer also

19   includes a billing rights summary.  Now, that's something that

20   doesn't need to be included on the periodic statement, on the

21   back of a periodic statement or even with it.  That's something

22   that Chase has opted to do this.  A short form billing rights

23   summary.  A lender could do this short form or it could provide

24   a long form once a year.  But within this short form billing

25   rights summary, it is disclosed that if a customer has a

14S3LITC

billing rights issue, if there is something inaccurate, there

is some fraud on the account or some other inaccuracy, we must

hear from you no later than 60 days after we sent you the first

bill.  That conforms with Regulation Z and the Truth in Lending

Act.  But if Chase had written 30 days, we must hear from you

no later than 30 days, we submit that even if Mr. Litwin didn't

have an inaccuracy, that that's a violation of the Truth in

Lending Act.  He was not -- he was given a disclosure.  He

would have been given a disclosure that did not reflect the

legal obligation of the parties.

THE COURT:  Supposing it said if you think your bill

is wrong, this bill, we must hear from you by no later than and

they gave a date that was 65 days after the bill.  And then

later on they said errors or questions about your bill need to

be brought to our attention within 60 days.  Or 59 days.  They

made an error when they said 59 days, but that was preceded by

a very specific date on this bill.  If you find there is an

error, you have to let us know by 65 days and a specific date.

How could anyone be really misled by that?  They would have to

honor the 65 days.  There would be no question about that.  So

in my hypothetical, the law had changed.  It used to be 59

days, it was changed to 60, they forgot to fix that second part

of their boilerplate.  But the date they were actually giving

on that bill and every other bill was 65 days.

Where is the statutory disclosure harm in that

14S3LITC

1    situation?

2           MR. SCHNALL:  Well, again, your Honor, it is the same

3    kind of harm.  It's saying, well, this month you have 65 days,

4    but this month you have until June 5, but generally it's 59

5    days and that's not --

6           THE COURT:  I'm not sure even that could be read in

7    this case.  But let's assume, let's take that.  But on each and

8    every bill in my hypothetical they give a date of 65 days and

9    they continue with that glitch where they say 59 rather than

10   60, so they forgot to update to the new law, so they're one day

11   behind.  But in fact the date they give on each and every bill

12   is more than the law requires.  So where is the harm from that

13   even from a disclosure standpoint?

14          MR. SCHNALL:  It could reasonably confuse the customer

15   and it tends to --

16          THE COURT:  Into doing what?

17          MR. SCHNALL:  It gives the prospective terms or it

18   gives a false sense of what the real terms are of the account

19   and what the real legal obligations are.  I could provide, I

20   mean, another situation.  A foreign transaction fee.  If you

21   use your card in France or Germany, let's say that the card

22   agreement called for a 3 percent transaction fee.  And a

23   customer was charged a 3 percent transaction fee, but on the

24   backer Chase discloses you can be charged a 4 percent

25   transaction fee.  Now that does not reflect the legal

14S3LITC

1    obligation of the parties, no one was harmed.  Chase was not

2    even required to disclose the 4 percent, what the general

3    transaction fee is, what the terms are, but they do.  And that

4    is a violation of the Truth in Lending Act.

5           THE COURT:  All right.  Well, I thank both counsel for

6    their very helpful arguments.  I will reserve decision.  I am

7    going to, however, put everything in this case on a hold status

8    staying everything until I issue at least a bottom line, I'll

9    get out a bottom line certainly within the next two weeks.  I

10   don't know if I'll get out an opinion that quickly, but I'll

11   give you a bottom line and we can see where we go from there.

12   All right?  Thanks very much.

13                              o0o

14

15

16

17

18

19

20

21

22

23

24

25